Good morning, Your Honors. My name is Paula Dinnerstein. I'm with Public Employees for Environmental Responsibility, and we're representing the petitioner in this case, Robert Whitmore. This is a classic case of whistleblower retaliation. In 2005, Whitmore began speaking out about the failure of the agency's OSHA's record-keeping program, which he had headed for 17 years in the newspapers, on television, and in Congress. He contended that industries were systematically under-reporting worker injuries and illnesses to the point where the program was actually a sham. OSHA not only looked the other way, but they touted these falling numbers as evidence of their success in protecting the American worker. Also in that same year, in 2005, Whitmore testified in an EEO proceeding against his own management. Retaliation began. For the first time in 35 years with the department, his performance evaluation went down, and his leave balances began to be misreported. And this was something of extreme importance to him because he suffered very serious health problems during this period. Is there ever an accounting with respect to those leave balances to determine whether they actually were inaccurate? Yes, there was. There was an accounting, and Mr. Whitmore testified that it found that, in fact, he had been deprived of approximately 75 hours of leave that should have been credited to him. However, the administrative judge in this case did not allow that evidence in and did not allow the witness that we tried to present, who is the person who performed the audit. Can you address the Morgan report and its effect in leading to the termination of Mr. Whitmore? Yes. After the altercation that happened between Mr. Whitmore and his supervisor, Mr. Dubois, Mr. Morgan was called in to do an investigation. Mr. Morgan was a former agency employee. He was known to be hostile to potential whistleblower. The agency obviously called him in because they knew what the result of his investigation would be. The administrative judge claimed that this whole horror was irrelevant because the agency didn't rely on the Morgan report for its removal action. However, if you just look at the documents, at the removal documents, they explicitly rely on the Morgan investigation. They quote statements from it, and they say that this is what the proposal actually says. It's the basis of the proposal. This is what shows that... Is there evidence that the officials who made the termination decision actually read the Morgan report? Yes, they testified to that during the hearing. The deciding official, he was asked about particular statements in the Morgan report. Did you credit this one? Did you credit that one? And he answered, no, I believe this one, but not that one. The proposing official testified that he relied on those statements for not only the penalty, but actually for upholding the first charge. But our issue really, we haven't gotten to yet, have we? The point found by the board was that even if the whistleblowing was a contributing factor, he would have been removed anyway. He had altercations in the office. He had multiple for a supervisor, and well, there's a 30-page report written by the administrative law judge on all of that. So how do we deal with that, which is someone certainly can't insulate themselves and become a wholly unacceptable employee just by reporting some inappropriate conduct at some point, becoming a whistleblower? That is certainly true, but the agency has a high burden to prove by clear and convincing evidence. They said they proved it. That's the whole point, is that there was a lengthy hearing, there were witnesses, there was a 30-page opinion, and they said they proved it, and it's not our job to re-adjudicate that evidence. Okay, well, I would suggest that in order to find, as the board did, that there was clear and convincing evidence that they would have taken the action anyway, which has to be supported by substantial evidence in the record, that's what you're here to review. That's exactly right. That the board ignored or discounted crucial evidence which undermined the clear and convincing case. First of all, although they found that Whitmore was a whistleblower, and although his whistleblowing involved saying that a major program of the agency was not functioning properly, and he was getting the attention of... All of that's given. We all understand that. The point is, he went into his boss's office, he called him names, he held the door open with his foot, he chased him down the hall, he wrote emails. We don't need to go through all the unsavory facts, but those facts were all found, and we can't change them, and don't they provide us a basis? The agency needs to prove not only that he committed misconduct, because that's a given, you don't even get to a whistleblower defense until there's misconduct proven, they have to prove that they would have taken the same action, removal, and we contend that they did not prove that. The things that Whitmore was accused of, he was in a mutual altercation in which both parties yelled, both parties swore, Whitmore in fact... The Administrative Law Judge found that Mr. Whitmore initiated that, escalated it, and perpetuated it. He did find there was some inappropriate, well, Dubois used the chicken word too. Even if you look at the facts as the Administrative Law Judge found them, there was no actual violence, there was no threat except a conditional threat. If you do that again, I will do such and such. There was a threat of violence, can we tolerate threat? That was one of the big points. I'm going to knock you into the basement. There was a conditional threat, if you ever do that again, and after that threat, Mr. Whitmore went out in the hall and said... Can we tolerate that in the federal workplace, that we can go around and threaten each other? Well, in accordance with this court's jurisdiction in the METS line of cases, it is not a true threat. It can't be proved a true threat. One of the factors is whether it's conditional, the surrounding circumstances, which here was that he went out in the hall and said, call security. Mr. Dubois spit on me. He wasn't about to commit violence. He was claiming that he had been assaulted. Let me ask you, if in fact we were to find, as you proposed, that the administrative law judge erred in not allowing certain evidence in, or in not adequately considering certain factors such as treatment of similarly situated employees, what is the remedy then? Is our remedy to send it back for further consideration, or are you asking us to conclude that in fact that the whistleblower activity was the basis for the termination? Because the agency has the burden of proof on the clear and convincing evidence, if they do not meet that burden, Whitmore wins and is entitled to corrective action. If you find that the record is not sufficient to make that determination because of all the evidence that we claim was improperly excluded, and all the witnesses that were excluded on the whistleblower defense, then you would have to remand it back to have a new hearing with that evidence properly and those witnesses properly included. But you wouldn't necessarily have to reach that if you decide that on the existing record they didn't meet their clear and convincing evidence burden. So I just wanted to go into some of the evidence that the board ignored when it found that clear and convincing evidence burden was met. It never looked at the actual disclosures to see what potential they had to create a retaliatory motive, which is one of the factors they're supposed to look at. And as this court has directed in the Carr v. Social Security case, and the board in the Chambers case, when you have high-level officials, in this case the signing official was the second in command of OSHA, he was the deputy assistant secretary, they represent the institutional interests of the agency. And when a whistleblower is attacking those institutional interests, there's a motive to retaliate. Is there evidence that he knew of the attacks? Oh yes. I mean we have a whole list in our brief of different emails where he was copied, where the agency was, people were going back and forth saying, well look what Whitmore did, he testified before Congress, he had this article, he detached the articles and they were... Is this Mr. Witt or Mr. Webb? Mr. Shalhoub is the deciding official, and Witt is the proposing official. Very high levels of the agency, going all the way up to the top of OSHA, the assistant secretary, were copied on these communications about Mr. Whitmore's disclosures and about responding to them. What do we say to what he said? Ms. Dinnerstein, we were talking about the violence threat a moment ago. That violence was about the timesheets, the threat of violence. The if was the timesheets. You've agreed that the timesheets was actually proven. Does that mean that the if clause is satisfied and he's now going to go knock them in the basement? No, actually the if was if you ever spit on me again. It was in the course of this confrontation. Whitmore's version was if you ever spit on me again. Dubois' version was he told me that if we weren't at the office he would hurt me. So either version, it's a conditional threat. He wasn't going to do anything right then. It was a contingent... But we can tolerate those in the federal workforce. Those are good things. No, we're not saying they're good things and we're not even saying that it wasn't worthy of some discipline. What we're saying is that he wouldn't have been removed if he weren't a whistleblower. Another indication of this is that these emails which they claim, which they're now claiming, were harbingers of violence according to the workplace violence policy. They had been going on for several months before they brought this action. You noted that Whit and Shalhoub didn't know about the disclosures, but of course the credibility finding was that they testified they had not been influenced by that at all in their removal decision. Right, and I think that this court has... How do we deal with the credibility finding? I think that this court has clearly found that when you have this high level, clear and convincing evidence, burden of proof, that mere denial by a deciding official that they retaliated does not meet that burden. There's probably never been a whistleblower case in history where the deciding official didn't deny retaliation. That is not enough to meet the burden. You have to look at all the surrounding circumstances. What about the threats of violence that were to occur after the heated passion, the moment of heated passion? I can understand there being a give and take, two grown men shoving each other, spitting on each other, cursing at each other. Apparently that happens in the federal workplace. What about the promise that I'd like to cold cock you into the basement? One of these days I'm going to come and cold cock you. That's not actually what he said. What he said is that if you ever spit on me again, I would knock you into the basement. That overall agreement was dealing with the timesheets, right? No. The altercations started with Whitmore coming in and saying, can you approve this lease slip? It was not about the timesheet. At that point, Whitmore was reacting to DuBois spitting on him. DuBois admitted at the hearing that he himself was so out of control that he was yelling to the point where he says, unpurposefully spit on Whitmore. They were both somewhat out of control. The way that the board has treated... And the finding here is, I thus find that Whitmore's conduct was far more egregious than that of DuBois. That was the finding, but I think you have to look beyond what was said to what's behind it. Is there support for it being much more egregious? Would you like to save your May it please the court? Although Petitioner has attempted to cast himself as a victim of an elaborate scheme by the agency to retaliate against him for whistleblowing, what this appeal really is about is his pattern of inappropriate, unprofessional, and intimidating behavior towards his supervisor over a period of months. Do you agree that the accounting showed that his supervisor, in fact, did mess with his timesheet? No, Your Honor. I do not agree with that. There is evidence in the record... Well, first of all, I don't think it's relevant because even if his timesheets were incorrect, no amount of incorrect timesheets or lead balances justify the type of antagonistic behavior that he demonstrated. Can somebody messing with... Can someone mess with someone's timesheets in response to whistleblowing activity? Well, first... With regards to Your Honor's first question, I apologize for going further. In the record at 789, which we cite in our brief, there are emails from the HR department actually instructing Mr. Whitmore that basically saying you can no longer borrow leave when your leave balance... You have your own leave. There also is a letter of warning from Mr. Dubois to Mr. Whitmore at 899. Was there an accounting that showed that he was denied 75 hours of leave? There's nothing official in the record. There's Mr. Whitmore's own testimony. But you're not denying it? You didn't deny it in your brief that the leave balances were wrong and you're not denying it now? I'm denying that there's any evidence that Mr. Dubois intentionally tampered with his timesheet. In fact, I'm not certain that Mr. Dubois, who was his direct supervisor, there are pay and leave systems that the federal employees have that he even had the power to tamper with the leave system. Isn't the reason there's no evidence in the record because the AJA didn't allow the evidence of that in the record? Other than Mr. Whitmore's testimony, it's actually unclear why Mr. McDowell did not testify in this case. Mr. McDowell was the witness who Mr. Whitmore proffered as his leave audit official. And that individual never ended up testifying. He was not excluded from what I can see as a witness. So I'm not certain that that is actually why there is no evidence of it. And indeed, there is sufficient evidence, substantial evidence in the record indicating that if anything, Mr. Whitmore was inappropriately using leave. Mr. Goddard wrote two memoranda well before the Morgan investigation. These were in April and June of 2007, in which he said that specifically that Mr. Whitmore had depleted his own leave, had been borrowing leave when he was in office. You don't disagree that the first event that occurs is whistleblowing activity, do you? I do, actually. Because if you look at the 2005 disclosure, which had to do with Cal OSHA, Mr. Whitmore represents in his brief that that was somehow under the tutelage or control of federal OSHA. If you actually look at the article itself, that's not true. But you're not taking issue with the finding that the whistleblowing contributed something. The issue here is not whether there was whistleblowing. That's given, right? It is a given based upon the AJA's finding. Correct me if I'm wrong. Okay, fine. The real issue here is whether they would have removed Mr. Whitmore anyway. And I believe that the most compelling evidence, first of all, the standard obviously in this court is substantial evidence, not clear and convincing. And so there is substantial evidence. All the panel really needs to look at are the actual emails that are in the notice of proposed removal. Extremely inappropriate and insubordinate language towards the supervisor. Consistently copying not only his own staff, but other supervisors at his level and above on these emails concerning leave. He went 20 years without any incident, without any problem, without any... In fact, all of his reviews were excellent, correct? Then we have some whistleblowing. Now you argue whether it was about Cal-OSHA or OSHA, but the first act was him saying something wrong about an OSHA activity, correct? He said, yes. That's where we start. So is it your view that from that point on, you could make that employee's life so obnoxious at work to the point that you get him to blow up and then fire him regardless of any retaliatory motive? I believe that the evidence actually indicates... There's an interesting email from a woman named Ilma Rothkopf, which is in the record at 860, and she was a very good friend of Mr. Whitmore's for years. They were in the union together. She, in July of 2007, right after... This is actually, I believe, dated July 10th, the date of the in-office confrontation with Mr. Dubois. She sent an email saying basically, because of Mr. Whitmore's medical conditions, something happened in him that changed his own personality sometime around, I think she says, 2005, 2006. So I think the evidence in the record really indicates that, if anything, it was Mr. Whitmore's personality that changed. He was the one who started going after his supervisors, going after other employees, being extremely disruptive. He put a sign on his office... Doesn't he say the retaliation is what caused him to change? I don't believe so, Your Honor. I think that the record indicates... Let me read you another email, and this goes back to the Morgan Report. This is an A680, and it's from a DOL official to David Morgan, who was the author of the Morgan Report. The email says, I'm confident that we can make a case that this is not tied to any protected activity. Exactly what protected activity is he engaged in? Testifying before Congress, working with the Charlotte Observer, activity engaged in long after we hired the contractor, drafted or proposed removal act. It goes on and talks about Mr. Whit, and whether he was duped before into signing something that he didn't know what. So we have two officials talking about how Mr. Whit had been influenced somehow before, and it ends and says, but then that takes us back exactly to what was the connection of what his protected whistleblower activity was, and how it was connected to the workplace violence concerns. Isn't this evidence that there was a connection between the whistleblower activity and that the independent investigator, Mr. Morgan, his job was to disconnect whistleblower activity from the subsequent retaliation, and to make sure that his report did just that? Was the Morgan Report, it seems to me that the Morgan Report was biased, and yet the Morgan Report was just dealt away with, out of hand. Why should we find that that was an abuse of discretion? I believe, Your Honor, because the administrative judge found after hearing testimony from both Mr. Oath testified that they did read the report, that their decisions were based upon their own independent review of all of the documentary evidence, which included a number of documents well predating Morgan's investigation. Morgan's investigation certainly was, there is evidence in the record that it was not done in the most even-handed way, and I believe that if anything, however, there were certain affidavits that were not. Does that evidence suggest that Mr. Morgan was hired in order to develop a record that separates retaliation from whistleblower activity? I don't believe it does, and I think it's also, as the A.J. found, it's irrelevant, because what the charges and specifications were, were email, a consistent pattern of email antagonization that he refused to stop, refusing to remove a sign from his door after being asked by a supervisor four times. But the proposed notice of removal quotes the Morgan report. Quotes it in almost every page. There's quotes from the Morgan report. How can you say that you can absolutely separate the two? Well, I think, again, I'm not saying that you can necessarily 100% separate the two, but what I'm saying is the agency didn't need the Morgan report. There's no requirements. But they used it. They used it. They used it to list the charges, and if that's the case, then the fact that it was completely biased, if the evidence would show that, would be something that should have been considered, right? The notice of proposed removal, the charges and specifications do not quote the Morgan report at all, in any way. The charges and specifications are based upon the confrontation on July 10, 2007, the emails and the sign that he refused to remove from his door. They are not the, I'm agreeing with Your Honor, it does reference the Morgan report, but the actual charges and specifications They're quotes from the Morgan report. Not in the charges and specifications. Well, maybe they don't use quotations, but the language is identical. It is copied from the Morgan report. I'm not certain where those quotations are. I know that the notice of proposed removal and the removal decision, the notice of proposed removal references the investigation in its introductory portion, and what the notice of proposed removal says is there has been, based upon the investigation, there is a pattern of abusive behavior. That abusive behavior is demonstrated in the charges and specs through the emails that the petitioner continued to send over a period of months to his supervisor. All right, let's talk about similarly situated employees. I mean, the administrative judge simply says, there's nobody similarly situated, period. That's all we're going to say. That, yes, your opposing counsel cites a whole series of board decisions where actual threats, real-time threats were deemed not sufficient to support removal and the removal was vacated. And yet, we don't have any evidence as to whether or not anybody who was involved in any kind of altercations with employees or who had maybe sent improper emails was ever disciplined. Are you telling me that nobody's ever been disciplined for inappropriate behavior in the workplace? At OSHA, Mr. Shalhoub testified that he had never seen this level of pervasive That's not the question. Do you have others who you can show were actually disciplined for any inappropriate conduct? The third car factor is not the agency's burden. If it were, agencies could never discipline someone in the first instance. The burden is upon Mr. Whitmore to bring forth other similarly situated non-whistleblowers who were not disciplined. He was unable to do so. So, no, there is no evidence of that in the record because he was not able to meet his burden of providing it. He attempted to have Ms. Waterdale testify on his behalf. She, however, was a union, another union official who in the record at, I'll find the record site. She basically, her proffer was about an employee who threatened her who didn't even work in OSHA. He was in ETA, which is a totally different agency. So, his own proffer, the only witness he even thought he could bring forth was not even relevant. It was not Jermaine. He was, that testimony would have been wholly irrelevant. And that, I'm sorry, that record site is in the appendix at 1098. The individual that she claimed was similarly situated was a man named Douglas Small at the Employment Training Agency, which is very different. It's a different agency from OSHA. And again, I think that the car factor, first of all, as we point out in our brief, the car factors are permissive. The agency is not required to prove each and every one of them. So, in whistleblower cases, do, if you offer a witness, are you saying that that witness has to be from the same agency? Well, if the agency, I believe, yeah, that's, yes, Your Honor, that would be the only way the test would make sense. Because how can you sanction an agency if a different agency takes that action? Do you have any authority for that? No, Your Honor. Similarly situated, I think, is the language, isn't it? Yes, Your Honor. And I believe a similarly situated employee would be within the same agency. Or couldn't it be, for example, a DAS in one agency and a DAS in another? Aren't they similarly situated? I'm not certain what a DAS is, but... A Deputy Assistant Secretary. I suppose they could be, Your Honor. But in my reading of the car test, the third factor, showing that someone is similarly situated, I think it's highly persuasive, at least, that the action that you're trying to challenge would be someone within the same agency. But Your Honor makes a good point. And perhaps I'm reading the third car factor a bit too restrictively. But I do think that the overriding point here, with regards to this particular appeal, is that Mr. Whitmore proffered certain witnesses, and then they just did not, he never was able to, the administrative judge, at least with regards to Ms. Waterdale, who he offered for the similarly situated evidence, he was not able to make a specific enough proffer for the administrative judge to feel as though her testimony would even have been relevant. And the administrative judge, as we document in our brief, gave Mr. Whitmore a number of occasions to crystallize her testimony, and he was unable to do so. And I think that the overarching point here, too, is that these were not, Mr. Whitmore testified at the hearing several years later, after the heat of the moment happened on July 10th. His testimony before the administrative judge about his own conduct on July 10th, she made several credibility determinations, in her opinion, that he was extremely excitable on the stand. He really was very enraged. He even said at one point, during the testimony- This is because he's been on leave for two years and made to sit there, and then they're bringing up charges saying they want to remove him after 20 years of service. I mean, I would be pretty excitable, too. Well, he said he was happy he didn't actually act out and actually punch, I think it was, Mr. Schmidt or Mr. Dubois that day. So several years after, he actually was boasting, I'm glad I had such restraint, because thinking back on it, I probably should have next to him. This is not the type of conduct that one would tolerate from a GS-15 employee of an agency who had worked there for 35 years. He was a supervisor, and he thought that this was absolutely justified because apparently there were some discrepancies with his leave. No, he thought it was justified because he said someone spit at him in the middle of his shirt. I mean, if someone spit at him and he said that he's glad he restrained himself, I don't see why that is not credible. If I may just finish the question, the judge who did hear, the administrative judge who did hear the testimony said that it was based upon her credibility determinations of the demeanor of Mr. Dubois and Mr. Whitmore. She does not believe, and Mr. Dubois flat out denied that he spit intentionally upon Mr. Whitmore. He admitted he spit on him.  which is very different from Whitmore's claim that Dubois went up there and actually intentionally spit on him. And I think that the egregiousness, there are several court holdings where the egregiousness of conduct like this, even where there is the slightest scintilla of retaliatory motive far outweighs that indicia of any retaliation, which again is not present here. So for those reasons, we request the court to affirm. This is interesting. About a minute and a half. So I just wanted to correct a couple points. Whitmore did try to introduce Mr. McDowell, who did the leave audits and that was refused by the judge. There was some confusion because first she accepted, but then she refused. He also tried to get in another witness, Dr. Finkel, who is the person that Dr. Morgan threatened to kill. Who would have testified to many other instances of intemperate emails, threats of violence, and even assaults at OSHA that went unpunished. So all that evidence of disparate treatment was not let in. How do we deal though with just this last line of the opinion? His intolerable behavior, escalating in intensity, was the reason he was removed. If the agency had really believed that he was a threat of violence. There's 30 pages that substantiate it. If the agency had really believed that he was a threat of violence and that his behavior was escalating, they would have, as the agency's own workplace in the violence policy directs, to intervene as early as possible, to have a meeting with the person, sit down and talk to them. Then if that doesn't work, you go on to progressive discipline. They didn't do any of that. They let this go for several months. This was a 37-year employee who had never been disciplined for anything. He was not warned. He was not told that his behavior was out of bounds. He was not given any lesser disciplines. But all of a sudden, after this confrontation with Dubois, they decided, okay, we've got something. We can finally get rid of this whistleblower. And they accused him of that. And then they piled on all these old emails that they had never addressed before. Thank you, Ms. Dinerstein. The final case this morning is NOAA Systems v. Intuit.